## WINSOR & al. vs. CUTTS & al.

Where a fishing vessel was let on shares to the master, who was to victual and man her, the owner having nothing to do with the purchase of supplies, nor with the employment of the vessel;—it was held that the owner was not liable for supplies furnished to the master.

Whether one holding the title to part of a fishing vessel, as security for the payment of the purchase-money, in trust for the master who had contracted for the purchase, and had taken the vessel for the fishing season on the usual shares, is liable for supplies furnished to the master;—quære.

THIS was an action of *assumpsit* against *Thomas Cutts* and *Richard C. Thornton*, as owners of the schooner *Sally*, of which *Thomas Farris* was master, for supplies denominated "great and little generals," furnished *June* 2, 1829, to the master.

It appeared that the schooner was originally owned, one quarter by *Cutts;* and the other three quarters by *Emery & Chase;* who, in *April*, 1829, contracted to sell their interest to one *Farris*, who was master of the vessel; taking his notes, with *Thornton* as surety, for the price. The conveyance was made directly to *Thornton;* who gave a written memorandum to *Farris*, purporting that *Thornton* was to retain the three fourths of the vessel, her earnings and bounty-money, till the notes were paid, and he should have received whatever he might have advanced by way of outfits, &c.;—that *Farris* should employ the vessel in the fishery;—that *Thornton* should receive and hold her earnings, fish and bounty for the above purpose;—and that *Farris* should be chargeable with all expenses, and credited with the earnings, &c., in the same manner as if he was the true owner. *Thornton* and *Cutts* accordingly took out the proper papers of the vessel on the 27th of *April*, 1829, in which they were stated to be the owners, and *Farris* the master.

It appeared from the testimony of *Farris* that in the spring of 1829, *Cutts* agreed to let him take the vessel on shares, for the purpose of employing her in the fishery during the fishing season. *Cutts* was to have nothing to do with the purchase of supplies; was to have one fourth part of the bounty allowed by law to fishing ves-

sels; and one fourth part of the vessel's share of the fish and oil. *Farris* was to victual and man her. In the course of the season *Farris* purchased part of his supplies at the store of *Cutts*, and paid for them, in the ordinary course of trade; and on one occasion transported goods in the schooner from *Saco* to *Boston*, for *Cutts*, who paid him freight for the same. During all this period neither *Cutts* nor *Thornton* gave directions concerning the vessel, nor received any part of her earnings; nor employed her; nor paid the men.

When *Farris* obtained the supplies of the plaintiffs, he gave them no information of his contract with *Cutts*, nor of the conveyance to *Thornton*, nor concerning the ownership of the vessel. And in *Nov.* 1829, he sold three fourths of the vessel to a person in *Portland*, and received the price, no part of which came to the hands of *Thornton*.

It further appeared that *Cutts* had in frequent conversations spoken of a debt due in *Boston* against them as owners of the vessel, of about three or four hundred dollars, alluding to the demand of the plaintiffs, which he said they would probably have to pay; and complained that they had heavy expenses to pay, and nothing coming in. *Farris* also had at some time declared to Mr. *Scamman*, the collector, that he had little or no interest in the bounty; which *Thornton*, at the close of the season, demanded of the collector, but did not obtain.

Upon these facts, proved before *Parris J.* and from which it was agreed that the court might infer all which a jury might, the case was submitted to the decision of the court; a nonsuit being entered by consent.

*J. & E. Shepley*, for the plaintiffs, relied on the general doctrine that the owners are liable for supplies furnished to the master for the purposes of the voyage; and argued that the present case was not within any exception to the rule; because the master was appointed by the owners themselves, and subject to their supervision and control in the employment of the vessel. *Rich v. Coe, Cowp.* 639; *Fletcher v. Braddock*, 2 *New Rep.* 182; *Milward v. Hallet*, 2 *Caines* 77; *McIntire v. Brown*, 1 *Johns.* 229; *Cheriot v. Bar-*

*ker*, 2 *Johns.* 346; *Reynolds v. Toppan*, 15 *Mass.* 370; *Taggard v. Loring*, 16 *Mass.* 336; *Wait v. Gibbs*, 4 *Pick.* 298; *Perry v. Osborne*, 5 *Pick.* 422. The case of *Thompson v. Snow*, 4 *Greenl.* 264, was decided in favor of the owners, on the same principle, the master in that case having the entire control of the vessel. But the owner's liability continues so long as he has any right to interfere in her management. *Emery v. Chase*, 4 *Greenl.* 407.

*Fairfield*, for the defendants, cited *Hussey v. Allen*, 6 *Mass.* 163; *Dame v. Hadlock*, 4 *Pick.* 458; *Leonard v. Huntington*, 15 *Johns.* 298; *Bixby v. Franklin Ins. Co.* 8 *Pick.* 86; *Frazer v. Marsh*, 13 *East* 238; *James v. Jones*, 3 *Esp.* 27; *Sharp v. United Ins. Co.* 14 *Johns.* 201; *Hallet v. Columbian Ins. Co.* 8 *Johns.* 272; *Reynolds v. Toppan*, 15 *Mass.* 370; *Taggard v. Loring*, 16 *Mass.* 336; *Perry v. Osborne*, 5 *Pick.* 422; *Cutler & al. v. Winsor*, 6 *Pick.* 335; *Thompson v. Snow*, 4 *Greenl.* 264; *McIntire v. Scott*, 8 *Johns.* 159; *Jackson v. Vernon*, 1 *H. Bl.* 114; *Chinnery v. Blackburn*, *ib.* 117, note *a*; *Eaton v. Jaques*, *Doug.* 455; *Portland bank v. Stubbs*, 6 *Mass.* 425; *Hatch v. Dwight*, 17 *Mass.* 299; *Champlin v. Butler*, 18 *Johns.* 169; 4 *Maule & Selw.* 240; *Goodwin v. Richardson*, 11 *Mass.* 474.

The opinion of the Court was read at the ensuing *September* term, as drawn up by

MELLEN C. J. It appears that *Cutts* and *Farris* originally owned the schooner; *Cutts* owning one quarter and *Farris* three quarters. That on or before the 12th of *April* 1829, *Farris* conveyed his three quarters to *Thornton* on certain terms mentioned in the statement of facts. That on the 27th of the same *April*, the schooner was enrolled and licensed as the property of the defendants; and that in the following *November*, *Farris* sold the same three quarters to some person in *Portland*, and received payment therefor. The supplies furnished by the plaintiffs, for which this action is brought, were furnished in *June* 1829; two months before which, *Farris*, according to his testimony, had agreed with *Cutts* to take his quarter part of the vessel on shares during the fishing season of

that year; to man and victual her himself; *Cutts* was to have nothing to do with the purchase of supplies, but was to have one fourth part of the bounty and one fourth part of the schooner's share of the fish and oil taken during the season. *Farris* was master. It appears that the terms of the above agreement were complied with in respect to the management of the vessel and her employment; and it does not appear that *Cutts* in any one particular interfered; on the contrary it does appear that he gave no directions concerning the vessel and received no part of her earnings that season, and did not employ or pay the men; that he sold to the captain a part of the vessel's supplies, and on one occasion paid freight to the captain for part of a cargo to *Boston*. Upon these facts the law considers *Farris* as owner, *pro hac vice*, and while the schooner was thus under his management and control, the liability of *Cutts*, the general owner, ceased and was transferred to him. This principle is distinctly settled or recognized in *Taggard v. Loring*, 16 *Mass.* 336; *Reynolds v. Toppan*, 15 *Mass.* 370; and by this court, in *Thompson v. Snow*, 4 *Greenl.* 264, and *Hersey v. Emery, ib.* 407, and the other cases cited by the counsel for the defendants. It is true the supplies were charged to the owners of the schooner, and that the plaintiffs at the time knew nothing of the bargain between *Cutts* and the captain; but in the receipt for the goods purchased, which *Farris* gave to the plaintiffs, they are described as "great and little generals for schooner *Sally* of *Saco*." The circumstance in respect to the manner of the charge, we apprehend, in legal contemplation does not affect the rights of *Cutts*. The facts show that in respect to these supplies, he was not owner, but *Farris* was. In the above cited case of *Reynolds v. Toppan*, the defendant appeared by the register or enrolment to be the owner; but the court said "it is not enough to prove that the vessel was owned by the defendant; it must appear also that she was in his employment." As to any declarations of *Cutts* respecting a claim of a *Boston* creditor against him as owner, and his apprehended liability, they cannot have any influence on our decision, any further than they have a tendency to lessen the credit due to *Farris*. The liability of *Cutts* must depend on legal principles applied to the facts proved. The testimony of *Farris* is impor-

tant to *Cutts,* to establish the agreement between them under which *Farris* took the vessel on shares, in the manner before stated ; but it is contended that his testimony is not to be relied on, because on some occasion, but when, does not appear by *Scamman's* deposition, he said in the presence of *Scamman,* " he had but a small interest in the bounty." It is true that by the agreement of the parties, we are authorized to draw all such inferences as a jury might legally draw ; but still, from such an expression, uncertain as to the time when used, and as to the amount of interest, we do not feel at liberty to reject his testimony as undeserving of credit. Many of the facts which do not appear to have been proved by his testimony, are in perfect harmony with the agreement on his part to take the vessel on shares. As before stated, it was proved that *Cutts* gave no directions as to the vessel, and received no part of her earnings ; did not employ or pay the men ; that *Cutts* paid him freight for part of a cargo to *Boston,* and *Farris* found supplies. Taking his testimony as true, we do not perceive how *Cutts* could be considered as owner, or chargeable as such when the plaintiffs sold and delivered the articles to *Farris,* according to the decisions above mentioned. *Cutts,* merely by letting his quarter part of the vessel to *Farris,* did not appoint him captain. Being owner himself *pro hac vice,* he chose to take the command himself, as *Thornton* took no concern in the employment of the vessel. In most of the cases cited by the defendant's counsel, the vessel was chartered or let to the captain, as in the present case ; still he had the vessel under his own control during the season, and *Cutts* had nothing to do with her.

Our opinion is that when the supplies were furnished, *Cutts* was not owner so as to be liable to the plaintiffs ; and whether *Thornton* was liable or not is immaterial in this action. The plaintiffs have declared against the defendants jointly, but the facts do not prove a joint contract. A nonsuit must be entered.